D & P Publishing Corp. and Kardex Rand Sales Corporation, Appellees, v. H. H. Conway et al., Appellants.

Gen. No. 32,969.

42

Opinion filed February 27, 1929.

KIRKLAND, FLEMING, GREEN & MARTIN, for appellants H. H. Conway and H. H. Conway Co.; J. B. MARTINEAU, JR., of counsel.

FOLLANSBEE, SHOREY & SCHUPP, for appellees; ROBERT W. SCHUPP and FREDERIC BARTH, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

The bill avers *inter alia* that for more than 30 years plaintiffs, both Delaware corporations and licensed to do business in Illinois, and their predecessor, Library Bureau, have been continuously and uninterruptedly "performing a certain unique printing and filing service for the Chicago Board of Underwriters"; that about 10 years prior to March 1, 1926, defendant Conway had been general manager, assistant treasurer and director of Library Bureau, and since that time has been general production manager of complainant D & P Publishing Corp., which with the other complainant, Kardex Rand Sales Corporation, acquired all of the assets, good will, etc., of Library Bureau about March 1, 1926; that in the course of Conway's employment he had direct supervision of the services rendered to Chicago Board of Underwriters, and had obtained full knowledge and information in reference to

the nature of that service; that Conway resigned as general production manager on May 19, 1926, and that his resignation was accepted as of its date; that thereafter Conway continued to act in an advisory capacity for complainants; that Conway in violation of his agreement to act in "an advisory and co-operative manner" and in violation of the trust and confidence reposed in him by complainants, entered into negotiations with the Chicago Board of Underwriters the latter part of May or the early part of June, 1926, for the purpose of inducing it to terminate its relation with complainants and to take its work or service from them and to give it to Conway or his proposed company, and that Conway enticed away certain of complainants' employees; that the first notice had of Conway's action was in a letter of July 17, 1926, from the Chicago Board of Underwriters, which was received July 19, 1926; that on July 8, 1926, Conway organized the H. H. Conway Company, the defendant company in this case; and it is further alleged that by reason of his wrongful acts and in violation of his contract and the trust and confidence reposed in him by complainants, Conway had obtained for himself or his company some order or contract from or with the Chicago Board of Underwriters for rendering the service theretofore performed by complainants, which contract belongs in equity and good conscience to complainants, who stand ready, willing and able to continue to perform such services; and the bill prays that defendants be decreed to turn over to complainants any order or contract which they may have with the Chicago Board of Underwriters for the rendering of service and that the defendants be enjoined *pendente lite* and perpetually from rendering any of such service to the Chicago Board of Underwriters under any order or contract, and from interfering in any manner with the business relations between complainants and said Board of Underwriters.

Defendants filed an answer in which, so far as the same is essential to our decision of this appeal, is as follows:

That the business conducted since March 1, 1926, in the name of the complainants has been conducted in reality by the ''Rand Kardex Bureau, Inc.,'' a foreign corporation, not licensed to do business in Illinois, and having its principal place of business in Tonawanda, New York; that the Rand Kardex Bureau, Inc., is not a party to this suit (as is patent without reference to this allegation in the answer); that the officers, agents, and directors of Rand Kardex Bureau supervise, manage and control the business pretended to be done in the name of complainants, which corporations are dummies and are owned by the Rand Kardex Bureau; that Conway had never been employed by complainant D & P Publishing Corp., as general production manager or in any capacity whatever, but on the contrary Conway about January 15, 1926, became general production manager of Rand Kardex Bureau; that as such general production manager Conway directed the work done at the printing plants owned by Rand Kardex Bureau all over the United States, including the production work done at the printing plants of D & P Publishing Corp.; that all of Conway's compensation came from Rand Kardex Bureau, and that he never received any compensation whatsoever from the D & P Publishing Corp.; that it was with the Rand Kardex Bureau alone that Conway had any contact or relations whatsoever.

The answer further sets forth Conway's resignation May 19, 1926, as general production manager of the Rand Kardex Bureau, and at the time Conway told S. M. Knapp, treasurer of the Rand Kardex Bureau, who came to Chicago for the purpose of accepting Conway's resignation, that he wanted his resignation to be effective as of May 19, 1926, and although he would

accept his regular salary up to June 30, 1926, in return for his help in turning over his work to his successor and giving his successor such information as would be necessary to carry on his duties, he wanted it distinctly understood that from May 19, 1926, his time was his own; that Knapp replied that the Rand Kardex Bureau would pay Conway $100 a month for ten months by way of a retainer, to commence July 1, 1926; that Conway told Knapp that he did not wish to take this sum because he would undoubtedly be a competitor or be connected with a competitor; that Knapp assented to this, and said that the Rand Kardex Bureau would naturally expect Conway to place himself and to begin at once on his future work, but that Rand Kardex wanted to keep him on the pay roll so that it would feel free to ask him questions concerning the nature of the work that Conway's successor might carry on; that Knapp carried Conway's letter of resignation back to Tonawanda, New York, the home office of the Rand Kardex Bureau, from which place, on May 25, he wrote the letter accepting Conway's resignation; that Conway never received any sum of $100 for the month of July, 1926, or at any other time, nor has he asked or sought to receive it; that Conway only visited the office of D & P Publishing Corp. for the purpose of giving information and advice to his successor, and to receive his personal belongings, left there by consent of his employer, and has never had access to any lists, records or employees of complainants; that on July 6, 1926, Chicago Board of Underwriters notified Conway that after June 30, 1926, he or a company to be organized by him, might take over the work or service required by the Board, and that on July 8, Conway organized the H. H. Conway Company. Denies that he accepted any compensation from either of complainants, or that he ever made use of any secret knowledge or information by reason of his former employment

with either Library Bureau or Rand Kardex Bureau; that all negotiations with Conway and the Board occurred long after Conway's resignation and the acceptance thereof by Rand Kardex Bureau, which had been upon the understanding that he was to begin at once, May 19, 1926, to work on his own account, with the understanding that he would be a competitor of Rand Kardex Bureau, or be connected with a competitor; and that Conway did not entice away any of complainants' employees, and neither of defendants obtained any contracts with the Chicago Board of Underwriters, but they have received an order to do such work beginning July 1, 1926, as directed by the Board; such order was, from day to day, to be canceled at the will of the Board at any time.

There was a hearing before the chancellor and a reference to a master, who found the issues of fact and law in favor of complainants, and recommended that a decree be entered in accord with his report. Objections before the master and exceptions before the chancellor were overruled, and a decree entered confirming the master's report granting the relief in that report recommended.

Defendants bring the record to this court for our review by appeal.

The testimony in the record does not establish any contractual relationship between the complainants, or either of them, and the defendant H. H. Conway. The Library Bureau, an Illinois corporation, the capital stock of which was owned by a New Jersey corporation of the same name, owned complainant companies; about November 1, 1925, J. H. Rand, Jr., acquired the capital stock of the Library Bureau of New Jersey, and thereafter acquired control of the Library Bureau of Illinois, and also by the same token acquired control of the complainant D & P. Publishing Corp.; the capital stock of the D & P Publishing Corp. was owned

by the Library Bureau of New Jersey, which had been organized to act as a dummy competitor for the Library Bureau of Illinois; thereafter there was a merger in which the Rand Kardex Bureau acquired all of the stock of complainants, and Conway became the general production manager; that company was organized in January, 1926, a foreign corporation having its principal office and place of business in Tonawanda, New York, and not licensed to do business in Illinois. While Conway had no contract of employment with Rand Kardex Bureau, his employment was one at will with a salary in excess of $12,500 a year. Conway had no employment with complainants, or either of them, and never received compensation of any kind from them, or either of them. Complainants were owned by the Rand Kardex Bureau, and Conway at no time worked for complainants, or received any compensation from them for any service which he rendered, as his employment was solely with the Rand Kardex Bureau, the stock of both complainants being held by Rand Kardex Bureau. Among the companies and businesses owned by Rand Kardex Bureau were complainant D & P Publishing Corp. of Chicago and Danville, The Globe Wernicke Company at Cincinnati, Ohio, State Cabinet Company, Marietta, Ohio, and the Rand Kardex Bureau Factories, at Tonawanda and Brooklyn, New York, and in Massachusetts.

In March, 1925, Conway moved his office from Chicago to the home office of the Rand Kardex Bureau in Tonawanda, New York, taking a desk in the office of the D & P Publishing Corp. for his use while he was in Chicago directing the productions at that company. Conway never was employed by either of the complainants, his employment was with the Rand Kardex Bureau, who paid his salary, who hired him and who had the power to discharge him at any time they saw fit, as his employment was of no definite duration. When

Conway resigned he sent his resignation to the Rand Kardex Bureau, at Tonawanda, and by that company it was accepted. His resignation was not submitted to complainants, or either of them, as he was not in their employment, but that of the Rand Kardex Bureau; and the Rand Kardex Bureau paid Conway's salary up to the time of his resignation. Conway's letter of resignation was addressed to Mr. J. H. Rand, Jr., president of Rand Kardex Bureau, and was accepted by Knapp, the treasurer, as effective May 19, 1926. Conway's salary for May and June was paid by check of the Rand Kardex Bureau, issued from the Tonawanda office, the home office of the company, and each check was for $1,041.66, and the checks were received by Conway respectively on June and July 1, 1926. The Rand Kardex Bureau is not a party to this suit and therefore the rights of Conway, as an employee of that company, are not presented for adjudication in this suit.

We ground our decision upon the point of the superior court decree argued for reversal that "Conway owed no duty, legal or equitable, to complainants, because he was never employed by them."

It is not disputed but that the Rand Kardex Bureau owns all of the stock of the complainant companies, and that in effect those companies are dummies representing Rand Kardex Bureau; that Conway's employment was not with the complainant companies, or either of them, but was with the Rand Kardex Bureau; that whatever Conway did in such employment was for or in the interest of his employer, the Rand Kardex Bureau, and not for complainants, or either of them.

Counsel for complainants cite *Davis v. Hamlin,* 108 Ill. 39, to sustain their contention that what Conway did for his employer inured to the benefit of complainants, and say "the principles stated in *Davis v. Hamlin* are applicable in a great variety of cases. The relation between the parties and the duties involved need

not be legal. It may be moral, social, domestic or merely personal." The difficulty with this contention is that Conway owed no moral, social, domestic or personal duty to complainants. His whole duty was to his employer, the owner of the complainant companies, the Rand Kardex Bureau, Inc.

In the *Davis-Hamlin* case, Davis was the employee of Hamlin, and Hamlin was entitled to all of his service, and during such service he negotiated a lease for himself of a theatre which Hamlin had operated for years, and which lease was obtained by Davis about the time Hamlin's lease was expiring. In the *Davis* case, Davis was untrue to his employer and instead of working for, worked against his interest. Conway owed a duty to his employer, and not to complainants. When Conway resigned, he did not tender his resignation to complainants, but to the Rand Kardex Bureau, who accepted it and his employment terminated by that resignation. We concede that the quotation from the decision of Lord Chancellor Cottenham, cited in the *Davis* case, *supra,* states the correct rule, where he said:

"The rule was one of universal application, affecting all persons who came within its principle, which was, that no party could be permitted to purchase an interest when he had a duty to perform which was inconsistent with the character of a purchaser. . . . Whenever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated."

The difficulty in the case at bar is that Conway held no relationship to complainants, and in no way was connected with their affairs, except as the business

transacted by complainants was that of Conway's employer, the Rand Kardex Bureau, and all the cases cited by complainants in their brief are to a like effect and likewise inapplicable to the facts of the case at bar.

The doctrine that a third person may maintain an action on a promise made by one person to another for his benefit is limited to contracts which have for their primary object and purpose the benefit of a third person and which are made for his direct benefit. *Kenfield Pub. Co. v. Baumgartner*, 189 Ill. App. 413.

In *City of Herrin v. Stein*, 206 Ill. App. 339, it was held that in order to entitle a party to recover under a rule of law that a third party may recover under a contract entered into between two other parties for his benefit, it is necessary that such contract should have been entered into for his benefit, and if it appears from the terms of the contract that the contract was solely for the benefit of the parties thereto, such third party cannot recover under its provisions.

The latter ruling is applicable to the case at bar. The contract of employment between Conway and the Rand Kardex Bureau was in no way for the benefit of complainants, but was *inter partes,* in which complainants had no interest. The business of complainants and all of its stock being owned by the Rand Kardex Bureau, all the service of Conway under his employment was for the benefit of his employer, who paid his salary, who hired him and who could have discharged him but did not, but did accept his resignation. The business which complainants transacted was that of the Rand Kardex Bureau.

The relationship of master and servant existed between Conway and the Rand Kardex Bureau, and none other. He was employed at a fixed salary, he rendered services in accord with the terms of his employment, and resigned from such employment by tendering his

resignation in writing to his employer, Rand Kardex Bureau. There was no relationship at all, either of employment or otherwise, between complainants and Conway. They neither hired him nor paid his salary, nor discharged him; neither did they receive a letter of resignation from him. There is no element of relationship of master and servant between the complainants and Conway. Therefore Conway owed no duty of any kind to complainants. His duty was to the Rand Kardex Bureau, and none other, so that if Conway has been guilty of the derelictions of duty charged against him in complainants' bill, they are derelictions of duty to the Rand Kardex Bureau, for which the latter only have a right of action against Conway.

It therefore follows from what we have said that there being no contractual relationship of any kind between complainants and the defendant Conway, the decree against the defendant is erroneous, and is therefore reversed with directions to the superior court to dismiss the bill for want of a proper party complainant.

<em>Reversed with directions.</em>

WILSON & RYNER, JJ., concur.